<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PETER BEKKERMAN,<br><br>    *Plaintiff,*<br><br>  v.<br><br>FORIS DAX, INC. d/b/a CRYPTO.COM; JOHN DOES 1 TO 10; and ABC COMPANY 1-10,<br><br>    *Defendants.* | Civil Action No. 25-2017<br><br>**OPINION**<br><br>December 29, 2025 |

**SEMPER,** District Judge.

This matter comes before the Court on Foris DAX, Inc. d/b/a Crypto.com's[1] ("Defendant" or "Crypto.com") motion to compel arbitration and stay the instant proceedings arising from Plaintiff Peter Bekkerman's ("Plaintiff") Complaint (ECF 1-1, "Compl."). (*See* ECF 5, "Def. Br.") Plaintiff filed a brief in opposition to Defendants' motion. (ECF 16, "Opp.") Defendants filed a reply in further support of their motion. (ECF 17, "Reply.") The Court reviewed the Complaint and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion is **GRANTED.**

---

[1] Defendants John Does 1 to 10 and ABC Company 1 to 10 are "fictious names of individuals and businesses alleged for the purpose of substituting names of Defendants whose identity will be disclosed in discovery and should be made parties to this action." (ECF 1-1 ¶ 7.) These Defendants have not appeared or been served with the Complaint.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Crypto.com is a Delaware corporation that advertises itself as "the world's leading cryptocurrency platform for licenses, registrations, and security certifications" and conducts business in New Jersey. (ECF 1-1, "Compl." ¶¶ 4, 12.) On April 26, 2023, Plaintiff opened a Crypto.com account. (ECF 5-2, "Neff Decl." ¶ 6.)[2] Defendant attests that at that time, the only way an individual could become a Crypto.com customer was by signing up through the Crypto.com phone application, which is available for download and use by iOS and Android users. (*Id.* ¶ 7.) Plaintiff maintains that he opened the account "primarily for personal, family, or household purposes" and "invested significant sums of money with Crypto.com." (Compl. ¶¶ 16-17.)

To sign up for an account, a new user is required to enter a mobile number and press the "Continue" button, which prompts a text notice in the middle of the screen notifying the user that by continuing, the user agrees "to the Crypto.com Terms & Conditions and Privacy Notice." (Neff Decl. ¶ 10.) The quoted phrase also operated as a hyperlink, which brings users to the terms and conditions of Crypto.com ("the Terms"). (*Id.* ¶¶ 10-11.) The Terms, accessible through the hyperlink, state explicitly that by "completing the sign-up process, you are entering into a binding contract with us and shall be deemed to have expressly read, understood and agreed to be bound by these Terms." (ECF 5-3, "Ex. A" § 1.4.) The Terms contain an arbitration provision specifying that disputes are subject to binding arbitration administered by the American Arbitration

---

[2] The Court "may properly consider the proffered declaration and exhibits in determining whether there existed reasonable notice and assent to the arbitration agreement in the [terms]." *Lloyd v. Retail Equation, Inc.*, No. 21-17057, 2022 WL 18024204, at *8 (D.N.J. Dec. 29, 2022). Courts "have regularly relied" on such evidence and "consider statements by those with personal knowledge about what 'would have appeared' on a user's screen." *Id.* (citing string of cases relying on declarations and screenshots of what users would have seen).

2

Association ("AAA") and providing the user with thirty days to opt-out of arbitration. (*Id.* §§ 16.4, 16.10.) Defendant's records indicate that Plaintiff accepted the Terms on April 26, 2023 at 15:02:56 UTC. (Neff Decl. ¶ 13.)

Plaintiff alleges that from May 31, 2023 through April 30, 2024, Defendant allowed third-party hackers to withdraw "through a series of transactions, approximately 7.84197693 Bitcoin from Plaintiff's account, totaling approximately $801,591.20" in value. (Compl. ¶ 19.) On September 19, 2024, Plaintiff mailed a letter to Crypto.com disputing the unauthorized withdrawals, and on October 10, 2024, Plaintiff received an email from a Crypto.com representative assigned to Plaintiff's case denying the dispute because the "transactions were initiated on [Plaintiff's] end" and stated that Crypto.com acted in accordance with their terms of service. (*Id.* ¶¶ 21, 23.) Plaintiff alleges that Defendant "failed to perform an adequate investigation into the matter or provide any documentation to support its decision." (*Id.* ¶ 27.) Plaintiff claims that due to the theft of his account funds, he has "experienced emotional distress due to the financial devastation that occurred as a result of Crypto.com's unlawful conduct[.]" (*Id.* ¶ 33.) For his injuries, Plaintiff seeks actual and consequential damages, as well as attorney's fees and costs. (*Id.* ¶ VIII.)

Plaintiff originally filed this action on January 23, 2025, in the Superior Court of New Jersey, Bergen County, Law Division. (*See* Compl.) Plaintiff's Complaint alleges that Defendants violated the Electronic Fund Transfers Act, 15 U.S.C § 1693, *et seq*. ("EFTA") and New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1, *et seq.*, ("CFA"). (*Id.* ¶¶ 35-50, 65-74.) Plaintiff also brings a common law tort claim of negligence. (*Id.* ¶¶ 51-64.) On March 21, 2025, Defendant removed the action to this Court. (ECF 1.) Defendants filed the instant motion on April 11, 2025,

seeking to compel arbitration of Plaintiff's claims and stay the present proceedings. (*See generally* Def. Br.)

## II.  STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing 9 U.S.C. § 1 *et seq*.). "Congress designed the FAA to overrule the judiciary's longstanding reluctance to enforce agreements to arbitrate . . . and in the FAA expressed a strong federal policy in favor of resolving disputes through arbitration." *Id.* (internal quotations omitted). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Id.* Instead, "[b]efore compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). If the response is affirmative on both counts, the FAA requires the court to enforce the arbitration agreement in accordance with its terms. *LoMonico v. Foulke Mgmt. Corp.*, No. CV1811511, 2020 WL 831134, at *3 (D.N.J. Feb. 20, 2020); *see also* 9 U.S.C. § 4.

"It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "But this presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id*. (quoting *Fleetwood Enters. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)); *see also Flintkote Co. v. Aviva PLC*,

4

769 F.3d 215, 220 n.3 (3d Cir. 2014) (the presumption in favor of arbitrability "applies only when interpreting the scope of an arbitration agreement, and not when deciding whether a valid agreement exists."); *Jaludi v. Citigroup*, 933 F.3d 246, 255 (3d Cir. 2019) ("The presumption of arbitrability enters at the second step—it applies to disputes about the scope of an existing arbitration clause.").

To determine whether the parties have agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *Century Indem. Co.*, 584 F.3d at 524; *see also Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 289 (3d Cir. 2017). When "applying the relevant state contract law, a court may also hold that an agreement to arbitrate is unenforceable based on a generally applicable contractual defense, such as unconscionability." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (internal citations and quotations omitted).

The Third Circuit has established a two-tiered framework for assessing motions to compel arbitration. *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 776 (3d Cir. 2013). "Where the affirmative defense of arbitrability of claims is apparent on the face of the complaint (or . . . documents relied upon in the complaint)," courts apply the Federal Rule of Civil Procedure 12(b)(6) standard to decide a motion to compel arbitration. *Id.* at 773-74 (cleaned up). However, the Rule 12(b)(6) standard is inappropriate when the complaint does not contain the "requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement[.]" *Id.* at 774 (internal quotations and citations omitted). In that event, "a district court should employ the standard used in resolving summary judgment motions

pursuant to Rule 56 of the Federal Rules of Civil Procedure." *Id.* at 771 (internal quotations and citations omitted).

### III.  ANALYSIS

The Court must evaluate the present motion in accordance with Rule 12(b)(6).  Plaintiff's claims arise from his relationship with Crypto.com and the duties owed by Crypto.com to him, which are expressly covered by the Terms that Plaintiff accepted upon creating his account.  (*See* Ex. A §§ 4.1.2 (Risk of Loss), 7.2 (Data Protection), 19.4.1 (Entire Agreement).)  Those Terms also contain the binding arbitration provision at issue.  (*See* Ex. A § 16.)  Thus, Bekkerman's claims implicate the Terms, and the Court must consider the motion under the Rule 12(b)(6) standard.  *See Lloyd*, 2022 WL 18024204, at *7 (finding motion to compel arbitration to be "appropriately governed under the Rule 12(b)(6) standard" where terms addressed alleged "conduct at the crux of th[e] matter" and therefore plaintiff's claims "necessarily implicate" terms, which contained the subject arbitration agreement).

#### a.  Validity of the Arbitration Agreements

To determine the validity of an arbitration agreement, courts apply "ordinary state-law principles that govern the formation of contracts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The Terms are governed by Florida law (*see* Ex. A § 19.8),[3] and the Court will interpret them accordingly.  Florida law governing arbitration agreements in the context of internet transactions recognizes two common presentations: "browsewrap" and "clickwrap agreements." *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. Dist. Ct. App. 2018).  "A 'browsewrap' agreement occurs when a website merely

---

[3] "Any dispute arising from these Terms, an Annex, or your use of the Services, whether brought in arbitration, small claims, or in a state or federal court, will be governed by and construed and enforced in accordance with the laws of the State of Florida…" (*Id.*)

provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process." *Id.* "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Id.* "The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id.* Clickwrap agreements "are generally enforceable" while browsewrap agreements are enforceable "when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. Dist. Ct. App. 2017).

Defendant argues that Plaintiff entered into an enforceable agreement to arbitrate because "Crypto.com's sign-up process provided Bekkerman with clear notice of the Terms." (Mot. at 12.) Defendant points out that the hyperlink with the Terms appeared in the center of the screen directly above the "Continue" button and "was brightly colored and contrasted against the surrounding dark background and adjacent white text." (*Id.*) (citing Neff Decl. ¶¶ 9-10.) The Court is persuaded by Defendant's argument that Plaintiff received adequate notice that by pressing the 'Continue' button he would be bound by the Terms, which were presented in "clear and bright font and in an uncluttered and central location on the screen adjacent to the 'Continue' button[.]" (*Id.*)

Whether defined as clickwrap or browsewrap, the agreement here is valid and enforceable. *See, e.g.*, *Rogolino v. Walmart, Inc.*, No. 24-14308, 2025 WL 396453, at *1-3 (S.D. Fla. Feb. 4, 2025) (enforcing arbitration agreement where purchase page stated "[b]y placing your order, you agree to our Privacy Policy and Terms of Use" adjacent to "Place order" button); *see Valiente v. StockX, Inc.*, 645 F. Supp. 3d 1331, 1338 (S.D. Fla. 2022) (explaining that Florida courts recognize clickwrap agreements as valid and enforceable). Courts have only "declined to enforce

'browsewrap' agreements when the hyperlink to the terms and conditions is buried at the bottom of the page, and the website never directs the user to review them." *Vitacost.com*, 210 So. 3d at 765. The hyperlink to the terms and conditions here was conspicuous, brightly colored and delineated, and certainly not buried at the bottom of the page or difficult for the user to locate.

Moreover, courts in this district routinely enforce agreements with similarly presented hyperlinks. *See Lloyd*, 2022 WL 18024204, at *10 (finding "checkout flow" process was enough to place user on notice of acceptance where defendant presented hyperlinked terms in a clear font, in an uncluttered location of the screen adjacent to corresponding action button, and terms were coupled with an explicit textual notification); *Mucciariello v. Viator, Inc.*, No. 18-14444, 2019 WL 4727896, at *4-6 (D.N.J. Sept. 27, 2019) (holding consumer was placed on reasonable notice that she was bound by the terms because checkout page included language stating by clicking "Book Now" she was agreeing to be bound by terms which she could view by clicking on the available hyperlink); *see also Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117 n.5 (3d Cir. 2017) ("Clickwrap agreements are terms that appear on a consumer's computer screen and to which a consumer can manifest assent by clicking on an icon indicating agreement.")

Furthermore, the top of the first page of the Terms displays a conspicuous notice in bold font regarding the agreement to arbitrate:

> **PLEASE MAKE SURE YOU FULLY READ AND UNDERSTAND THESE TERMS AND KEEP THEM FOR FUTURE REFERENCE. THESE TERMS INCLUDE A WAIVER OF YOUR RIGHT TO PARTICIPATE IN CLASS OR REPRESENTATIVE ACTIONS AND AN AGREEMENT TO RESOLVE DISPUTES BY ARBITRATION ON AN INDIVIDUAL BASIS. PLEASE REFER TO CLAUSE 16 FOR ADDITIONAL DETAILS.**

(Ex. A at 1.)  Section 16 itself also advises in bold font to "**read the following section carefully because it requires you to arbitrate certain disputes and claims with Crypto.com and limits the manner in which you can seek relief from us, unless you opt out of arbitration**

**by following the instructions set forth below.**" (*Id.* § 16.1.)  Within the paragraph describing the arbitration of disputes, an additional sentence appears in bold: "**you and Crypto.com waive your rights to a jury trial and to have any dispute resolved in court**." (*Id.* § 16.3.)  These notices and pronounced disclosures put Plaintiff on notice of the Terms' binding agreement to arbitrate.

Plaintiff does not object to Defendant's arguments regarding contract formation, the validity of the clickwrap agreement or the arbitration provision itself,[4] but instead he argues that the Terms are unenforceable because they contain an amendment provision that is illusory. (*See* Opp. at 6-13.)  Plaintiff contends that the amendment clause makes the entire agreement illusory because it provides Crypto.com with "a unilateral, unfettered ability to change the terms of the parties' relationship, without providing an opportunity to accept or reject changes[.]" (*Id*. at 7.) Plaintiff argues that "Defendant did not bind itself" to a set of static terms and relies on New Jersey state law to argue that such an illusory contract cannot be enforceable. (*Id.* at 7-8) (citing *G. Loewus & Co. v. Vischia*, 65 A.2d 604, 606 (1949) ("It is true, as a general rule, that if it is wholly optional with one party to a bilateral agreement whether he shall perform or not, there is no legal contract.")  But, as Plaintiff concedes in opposition, an amendment provision that provides specific notice procedures is not illusory. (*See* Opp. at 8.)  Plaintiff argues that here, the Terms contain no

---

[4] Therefore, the Court agrees with Defendant that by "failing to address or dispute Crypto/com's contract formation evidence, Bekkerman has waived any objection to contract formation and conceded the issue." (Reply at 8 n.4) (citing *Sang Geoul Lee v. Won Il Park*, 720 F. App'x 663, 666 (3d Cir. 2017) (noting that appellant's "failure to respond to the pertinent opposition-brief argument acts as a concession of that argument") and *Burg v. Platkin*, No. 24-10076, 2024 WL 5198776 at *6 n.5 (D.N.J. Dec. 23, 2024) (noting that by failing to address arguments raised by Defendant, Plaintiff "conceded those arguments").  Accordingly, the Court finds that Plaintiff entered into a binding and valid agreement to arbitrate.

such notice procedures that would allow Plaintiff a practical opportunity to review the updated terms. (*Id.* at 9.)

The amendment clause states that the "Terms may from time to time be updated or amended. We will post any such updates on the Crypto.com App or Crypto.com Web, or Site. Such updated Terms as posted will take effect immediately unless otherwise indicated." (Ex. A § 19.1.) The clause further provides that "[b]y continuing to use the Crypto.com App and/or the Crypto.com App Services after any such change, you are indicating your acceptance of the updated or amended Terms" and that "[i]f you do not wish to be bound by any changes or amendments to these Terms then you should stop using the Crypto.com App and/or the Crypto.com App Services immediately." *Id*. "A contract is illusory under Florida law when 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor-who says, in effect, 'I will if I want to.''" *Handi-Van, Inc. v. Broward Cnty.*, 116 So. 3d 530, 540 (Fla. Dist. Ct. App. 2013) (quoting *Princeton Homes, Inc. v. Virone*, 612 F.3d 1324, 1331 (11th Cir. 2010)). A party's reservation of the right to modify a contract is enforceable and not illusory where the reservation is subject to limitations. *Diverse Elements, Inc. v. Ecommerce, Inc.,* 5 F. Supp. 3d 1378, 1382 (S.D. Fla. 2014). Defendant argues that its amendment provision is not illusory because it is subject to two limitations: (1) notice by positing updated terms to its app or website and (2) permitting users to agree to any amendment by continuing to use Crypto.com's services or reject the amendment by ceasing to use Defendant's services. (Reply at 7) (citing Ex. A §19.1.)

Plaintiff relies on *Blair v. Scott Specialty Gases* to argue that the Terms are illusory, but the *Blair* court held that the arbitration agreement at issue was not illusory where the right to alter the agreement was conditioned on "putting the change in writing, providing a copy to the employees, and allowing the employees to accept the change by continuing employment." 283

F.3d 595, 604 (3d Cir. 2002). Similarly, in *Sing v. Uber Techs., Inc.*, another case that Plaintiff cites, the court held that the "limitations on Uber's right to modify the agreement[,]" which provided that any modifications will be conveyed in writing to the user and become effective only if the user consented by continuing to use the Uber app, were "sufficient to save it from being illusory." 67 F.4th 550, 563 (3d Cir. 2023). The Terms here explicitly provide that Defendant "will post any such updates on the Crypto.com App or Site" in writing to make them accessible to users, and allows its users to opt-out of arbitration within thirty days of accepting the Terms.[5] (Ex. A §§ 19.1, 16.10.)

In *Glover v. Fein, Such, Kahn & Shepard, P.C.*, Magistrate Judge Waldor rejected the almost identical argument that an arbitration agreement was illusory and unenforceable because the defendant "*could have* changed the terms of the arbitration agreement" or the agreement generally. No. 23-22282, 2025 WL 1419835, at *4 (D.N.J. May 16, 2025) (emphasis added). There, Judge Waldor held that "an amendment provision is not illusory when a plaintiff [can] enshrine his rights under the arbitration provision by providing written notice to the defendant of his intention to arbitrate."[6] *Id.* Here, the arbitration provision allowed Plaintiff to opt out of binding arbitration within thirty days of the date of acceptance of the Terms. (*See* Ex. A § 16.10.) Accordingly, "while the promisor may change or amend the terms and conditions in the Agreement, Plaintiff currently has the right to provide written notice regarding its intent to arbitrate

---

[5] "You have the right to opt out of binding arbitration within thirty (30) days of the date you first accepted these Terms by sending a written opt-out notice via certified mail to 1111 Brickell Avenue, Suite 2725, Miami, Florida 33131." (Ex. A § 16.10.)

[6] The agreement in *Glover* provided: "**YOU HAVE THE RIGHT TO REJECT THIS AGREEMENT TO ARBITRATE, BUT YOU MUST EXERCISE THIS RIGHT PROMPTLY. If you do not wish to be bound by this agreement to arbitrate, you must notify us in writing within 60 days after the date your Account is opened**." *Id.* (emphasis in original).

11

(or not)" and the Court likewise rejects Plaintiff's assertion here that the Terms are illusory and unenforceable. *Glover*, 2025 WL 1419835, at *4.

For these reasons, the Court finds that the agreement to arbitrate is valid and enforceable.

### b. Agreement's Coverage of the Dispute

The Court must next address whether Plaintiff's claims in the instant litigation fall within the scope of the arbitration agreement. *See Century Indem. Co.*, 584 F.3d at 522. The Terms state that the arbitration agreement shall cover "any and all claims for relief and theories of liability between you and Crypto.com, whether based in contract, tort, fraud, negligence, regulation, or ordinance." (Ex. A § 16.3.) The Terms mandate that arbitration is required for:

> [C]laims for relief under any state or federal statutes, including, but not limited to, the federal and any state analogs of the Telephone Consumer Protection Act, the Fair Credit reporting Act, Fair and Accurate Credit Transactions Act, and other statutes, including state and federal statutes relating to the collection of personal and/or biometric data; claims for common law fraud, misrepresentation, or any other legal or equitable theory arising out of your relationship with Crypto.com, and/or any interactions between you and Crypto.com.

(*Id.*) The Complaint alleges that Defendant allowed a theft of Plaintiff's deposits to take place and "failed to comply with the EFTA where Plaintiff informed Defendants of one or more unauthorized electronic fund transfers" and "failed to maintain adequate security measures" or properly investigate the alleged theft, in violation of federal, state, and common law. (Compl. ¶¶ 1-2.) A dispute arising from such allegations falls squarely within the parties' valid agreement to arbitrate.

Accordingly, the Court finds that the arbitration agreements cover the dispute.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to compel arbitration (ECF 5) is **GRANTED** and the current matter is **STAYED**. An appropriate Order follows.

                                        */s/ Jamel K. Semper*
                                        **HON. JAMEL K. SEMPER**
                                        **United States District Judge**

Orig:   Clerk
cc:      Jessica M. Allen, U.S.M.J.
        Parties